

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-28-2006

# Singh v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-4255

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Singh v. Atty Gen USA" (2006). *2006 Decisions.* Paper 1537.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1537

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT

NO. 04-4255

LAKHWINDER SINGH,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

On Petition for Review of an Order of the Board of Immigration Appeals
No. A97-390-364
Immigration Judge: Hon. Mirlande Tadal

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 25, 2006

BEFORE: RENDELL and STAPLETON, Circuit Judges,
and GILES,* District Judge

(Opinion Filed February 28, 2006  )

*Hon. James T. Giles, Chief Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

OPINION OF THE COURT

STAPLETON, Circuit Judge:

Petitioner Lakwhinder Singh is a native and citizen of India and a member of the Sikh religion. He seeks review of an order of the Board of Immigration Appeals ("BIA") denying him asylum, withholding of removal, and relief under the Convention Against Torture. We will deny the petition for review.

I.

Singh gave the following testimony before the Immigration Judge ("IJ") in support of his petition for relief.

Singh joined the Akali Dal (Mann) political party in 1998 because of its advocacy for the rights of Sikh people and related causes. His father is also a member of the party. As a member of the party, Singh was involved with the collection of money and in providing assistance for families whose family members were killed in the 1984 Sikh massacre.

Singh testified that he was arrested by Indian police in Punjab on three occasions. He was first arrested during a June 1999 rally against the government. Singh testified that, when the police arrived at a rally organized to protest the destruction of a temple, the

police began "beating the people who were having the rally." App. at 121. Singh himself was beaten and then arrested. He was detained at the police station for three days and beaten twice "with sticks and the butts of the gun and leather strap." *Id.* at 122. Singh testified that the police berated him for speaking out against the government and for his support for an independent nation for Sikhs. After he was released without being charged, Singh went to the hospital and stayed for roughly three days.

Singh was again arrested in March 2000 in connection with his participation in a demonstration in front of a government office. After the demonstration, the police arrested Singh when he was attempting to pick up his scooter. Singh testified that the police removed his turban and pulled his hair. He was then held for two days in a police station with his hands tied behind his back. While Singh was detained, two policemen beat him with a stick and the butt of a rifle while Singh was held upside down. Singh testified that the police told him to "stop the activities of the party." *Id.* at 127.

Singh testified that he was arrested for a third time when the police raided his house at night. He testified that the police tied him and beat him. Singh was then held at the police station for two days. He testified that while at the station, the police kicked him and dragged him through the station by his hair. Singh's father was able to secure Singh's release through a "heavy" bribe and by promising that Singh would not take part in other political activities.

Following this last arrest, Singh went to live with relatives in another town. While

he was gone, the police raided the homes of relatives looking for him. As a result, Singh's father sent him out of the country in the summer of 2003. Singh has received reports from his father that the situation in Punjab remains hostile for members of the Akali Dal (Mann) party. Singh testified that he believes that if he returns to India he will be arrested and killed.

As the IJ noted, Singh gave the following testimony on cross-examination:

> The respondent testified on cross that the Akali Dal Mann is not an extremist organization. The respondent testified that to the best of his knowledge this organization does not promote violence and has never at any time attacked police, the police officers or made any threat against the government. The respondent confirmed that the Akali Dal Mann operates peacefully and has not enticed any form of violence in India.

> The respondent testified that he traveled from India by plane and he boarded the plane at the Delhi International Airport. The respondent claimed that he presented his own passport which was issued to him in 1996 to the immigration authorities at the Delhi airport. The respondent testified that the passport presented in his home country to depart India is in the possession of an agent. The agent took access of the passport when he arrived in Argentina. The respondent was asked how it was that he was able to leave India without any difficulties. The respondent testified that he was not suspected as being a terrorist, hence his ability to leave India without any encounters or any inquiries at the airport.

> * * *

> The respondent acknowledged that Akali Dal Mann is a legal party in India and Mr. Mann, the leader of Akali Dal Mann is actually a member of parliament.

> The respondent was specifically asked about the nature of injuries, if any as a result of the alleged beatings on those three arrests. The respondent testified that as to the third arrest which allegedly [sic] in November, 2002 the lasting injuries that he sustained was that one of his

4

elbows had a small scratch. As to the first arrest the respondent acknowledged on cross examination that he suffered no serious injury. He stated that he had severe pain on most or part of his body. As to the second arrest the respondent was asked whether he suffered any serious injury. The respondent testified that his entire body suffered pain.

App. at 62-63.

In addition to his own testimony, Singh offered at the hearing background materials on conditions in Punjab, a letter from his father corroborating his account of his arrests, a letter from the leader of the Akali Dal (Mann) party, and a document purporting to be a certificate of a "Medical Officer" regarding Singh's hospitalization following his first alleged assault.

## II.

Singh testified that he came to this country because he was afraid of being further persecuted by the Indian police because of his membership in the Akali Dal (Mann) party. He insists that he fears such persecution if he returns to India. Both the IJ and the BIA declined to credit Singh on this score and concluded that he had "failed to meet his burden of proving that he is a refugee." App. at 66.[1] We must uphold this conclusion unless "no reasonable fact finder could make that finding on the administrative record." *Dia v. Ashcroft*, 353 F.3d 228, 249 (3d Cir. 2003).

---

[1] Singh contends that the BIA and the IJ analyzed his case is disparate ways and decided it on different grounds. On the contrary, we read the BIA's opinion as being in complete agreement with the IJ's oral opinion. Both found Singh's testimony to be unpersuasive, primarily because of its inconsistency with recent background material and the medical report, and because of its internal inconsistency. Both concluded that Singh had accordingly failed to carry his burden.

The primary problem that the IJ and the BIA had with Singh's testimony was that it seemed "inconsistent with the recent background materials." App. at 3. After a thorough review of the background materials submitted by both sides, the IJ concluded that, while Punjab Sikhs are occasional victims of violence at the hands of the police or rival factions within the Akali Dal (Mann) movement, it did not appear that "Akali Dal's are systematically mistreated by the authorities because of their membership with the Akali Dal Mann or Akali Dal Badal." App. at 70. The absence of such systematic persecution together with Singh's inability to identify anything about his activities or beliefs that would make him of special interest to the authorities caused the IJ and the BIA to be unpersuaded by his testimony. They failed to understand why a "mere party member" would be persecuted and pursued to the extent that Singh testified he was. As the IJ explained in her oral opinion:

> If the respondent was of interest to the authorities why did they release him on three separate occasions and why did they continue to inquire about the respondent after he presumably left his home and the home of family members. No explanation was offered as to this continued interest in the respondent on the part of the police. The respondent was a mere member of the Akali Dal Mann. The Akali Dal Mann is a party with [a] large amount of followers. What was specific about the respondent was [sic] that he was of interest to the authorities? The background materials provide no evidence that there's a pattern of practice whereby mere members of Akali Dal are systematically taken into custody and mistreated by the authorities. As there is not evidence of a pattern or practice it is the respondent's burden to establish the reason why the police continued to maintain an interest in him even after he left his area. The respondent has been a member of Akali Dal Mann as early as 1998. Therefore why in the year 2003 the police sought [sic] to take him into custody just for being a member of Akali Dal Mann? Respondent left India with his passport. Respondent did not have

any problems at the airport. He stated that he was not of interest to the authorities because he was not classified as a terrorist, that they never accused him of being a terrorist. . . . If the government was not interested in him because they did not believe he was a terrorist what other interest did the government have in him? That question is not answered and the respondent did not provide any persuasive testimony that he is a person of interest to the police in India or in the Punjab area.

App. at 75-76.

This basic problem with Singh's account was exacerbated by several inconsistencies in the evidence he tendered. First, Singh testified that, after his first arrest, he was a patient in the hospital for three days. This, however, was inconsistent with his hospital certificate which indicated he was treated on an out-patient basis.

Second, inconsistencies were found in the evidence regarding the injuries Singh sustained during his alleged arrests:

[Singh] testified that he was severely beaten on all three occasions. However he stated that he suffered no serious injury on cross examination as a result of the first arrest. This would not be mesh [sic] with his testimony that he was injured to the point that he was admitted at the hospital for three days. The respondent testified that [after] the second arrest his entire body was in pain. He did not elaborate any further and as to the third arrest after all of this mistreatment the respondent only had a scratch on his elbow. Such testimony clearly undermines prior testimony that he was seriously mistreated by the police when he was allegedly held in custody on three separate occasions.

App. at 74-75.

Both the IJ and the BIA were troubled not only with the inconsistency between the content of the hospital certificate and Singh's testimony, but also with the misspelling of the name of the hospital and the question that raised about its authenticity.

7

Finally, while the BIA did not expressly comment on it, the IJ was concerned by the fact that Mr. Mann, the head of Singh's party, while expressing a general opinion that Singh might be persecuted if he returned, made no mention of Singh's three arrests. In the IJ's view, "if indeed Mr. Mann was aware that [Singh] was arrested, as claimed by [Singh], it is not likely that he would fail to . . . provide the specific information in [his] letter." App. at 73.

## III.

We have reviewed the background materials submitted by each side and find the conclusion drawn by the IJ and the BIA to be a reasonable one. A reasonable fact finder could well conclude from those materials that it would be unlikely that a "mere member" of the Akali Dal (Mann) would receive the degree of attention that Singh claims to have received from the authorities. Likewise, a reasonable fact finder could well conclude from the evidence that Singh gave an inadequate explanation for that alleged attention. Moreover, the inconsistencies that troubled the IJ and the BIA were about material matters and concerned matters of sufficient importance that they could not easily be attributed to oversight or loss of memory.

It follows that we may not overturn the conclusion that Singh's account of his past persecution is unpersuasive. The petition for review will be denied.